IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-01102-CYC

OMIL COTTO,

    Plaintiff,

v.

UNITED STATES OF AMERICA, and
ALFREDO DIAZ,

    Defendants.

---

## ORDER

---

**Cyrus Y. Chung, United States Magistrate Judge.**

    Defendant United States of America moves for summary judgment on plaintiff Omil Cotto's claims that (1) the United States negligently responded to an assault he suffered on January 22, 2020 and (2) a nurse employed by the United States caused him an infection by negligently removed sutures. Because the Court lacks subject-matter jurisdiction over the first claim, the Court grants the motion as to that claim. Due to a lack of evidence of any infection resulting from removal of the sutures, the Court also grants the motion as to the second claim.

    There is a threshold issue before addressing the motion's merits. The plaintiff requested to file a surreply. ECF No. 109. "A district court must permit a surreply where it relies on new materials—i.e., new evidence or new legal argument—raised in a reply brief." *United Fire & Cas. Co. v. Boulder Plaza Residential, LLC*, No. 06-cv-00037-PAB-CBS, 2010 WL 420046, at *10 (D. Colo. Feb. 1, 2010). "However, where the materials are not new or a court disregards any materials that are, that court need not permit a surreply." *Id*. While surreplies are an "unusual

privilege," *S.E.C. v. Harman Wright Grp., LLC*, 777 F. App'x 276, 278 (10th Cir. 2019), and the United States opposes it here, ECF No. 110, the Court exercises its discretion to allow a surreply given the plaintiff's pro se status and will therefore consider the surreply filed at ECF No. 109-1. *See Abolaji v. St. Vrain Sch. Dist.*, No. 23-cv-02740-GPG-SBP, 2025 WL 552356, at *2 (D. Colo. Feb. 19, 2025) (considering surreply as exercise of discretion); *Hill v. Ciolli*, No. 23-cv-02539-CNS-KAS, 2024 WL 4338030, at *6 (D. Colo. Aug. 29, 2024) (same). Accordingly, the Plaintiff's Motion for Leave to File Sur-Reply in Opposition to Defendant's Motion for Summary Judgment, ECF No. 109, is granted.

## **LEGAL STANDARD**

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Wright ex rel. Tr. Co. of Kan. v. Abbott Lab'ys, Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (quotation marks omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. The dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. "The moving party bears both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quotation marks omitted).

If the moving party satisfies its initial burden, the non-moving party "may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial as to those

dispositive matters for which it carries the burden of proof." *Id.* (quotation marks omitted). The specific "facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007). Affidavits and testimony "must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." *Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1030–31 (10th Cir. 2022). "The court views the record and draws all favorable inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## UNDISPUTED FACTS

Because a district court is tasked with determining whether there is a genuine dispute as to any material fact, Fed. R. Civ. P. 56(a), the Federal Rules of Civil Procedure require a party "asserting that a fact . . . is genuinely disputed" to "support the assertion by . . . citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c). This Court's Practice Standards further require particular denials or admissions of a movant's proposed set of undisputed facts by a party opposing summary judgment with specific citations to evidence in the record. D.C.COLO.MJ V.10.[1] The plaintiff did none of this, *see* ECF No. 105, even after the United States pointed out the error. *See* ECF Nos. 108 at 1–3, 109 at 3–4. Thus, his "failure to object to an asserted fact on a particular ground forfeits the argument that summary judgment should be

---

[1] At the time the response was filed, then-Chief Magistrate Judge Hegarty presided over this case. While his requirements for formatting the undisputed facts were different from the undersigned's requirements, the change in judicial assignment on January 6, 2025 did not change that fact that the plaintiff was required to include a separate section in his response that admitted or denied each fact alleged by the United States in its motion. Instead of doing so, the plaintiff picks and chooses specific facts to challenge. *See* ECF No. 105 at 2–4. That is improper.

3

denied on that ground." *Butler v. Daimler Trucks N. Am.*, LLC, 74 F.4th 1131, 1151 (10th Cir. 2023). As a result, the Court may consider any unchallenged facts undisputed for the purposes of considering this motion. *See id.* (teaching that a "court need only consider the grounds actually stated by a party as reasons for concluding that another party's assertion of fact is disputed."); Fed. R. Civ. P. 56(e)(2).

It is true that district courts must construe pro se plaintiffs' pleadings "liberally" and hold them "to a less stringent standard than formal pleadings drafted by lawyers," *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)), including during summary-judgment proceedings. *Hall*, 935 F.2d at 1110 n.3. But courts "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). And liberally construing pleadings cannot conjure a factual dispute out of thin air.

In addition, the plaintiff's limited objections to the United States' asserted facts, when they are articulated, are deficient in their particularity. For example, he states that "BOP Program Statement 5500.14 requires staff to respond immediately to inmate assaults and ensure the safety of injured individuals." ECF No. 105 at 3. Program Statement 5500.14 runs 82 pages, ECF No. 92-5 at 9–91, and the plaintiff fails to indicate which, if any, pages support his statement that it "requires staff to respond immediately to inmate assaults." ECF No. 105 at 3. That will not do. It does not "cit[e] to particular parts of materials in the record . . . ; or show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). And "on a motion for summary judgment, it is the responding party's burden to ensure that the factual

4

dispute is portrayed with particularity, without depending on the trial court to conduct its own search of the record." *Cross v. The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) (quotation marks omitted); *see* Fed. R. Civ. P. 56(c)(3) (stating that a court "need consider only the cited materials"); *Barnes v. Omnicell*, No. 23-1336, 2024 WL 2744761, at *3 (10th Cir. May 28, 2024) (unpublished) (noting that "the district court is under no obligation to parse through the record to find the uncited materials" (quoting *Doe v. Univ. of Denver*, 952 F.3d 1182, 1191 (10th Cir. 2020))).

Finally, the plaintiff includes factual statements in his response and surreply that cite to no record evidence, but such unsworn statements are not competent summary judgment evidence. *Torres v. Colo. Dep't of Corr.*, No. 18-cv-02704-KMT, 2020 WL 5629058, at *4 (D. Colo. Sept. 21, 2020). For example, the plaintiff avers that "the untreated symptoms of infection required follow-up care and delayed [his] healing process," ECF No. 105 at 4, but offers no support for this statement other than a vague allusion to his medical records. Bare assertions in briefs are not evidence, and the Court cannot credit them.

With that prologue in place, the following facts are undisputed and identified by reference to "particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1)(A), viewed in the light most favorable to the plaintiff.

1. On January 22, 2020, Cotto was assaulted by defendant Alfredo Diaz at USP Florence. ECF No. 92-3 at 11; ECF No. 105-1 at 25:9–11, 28:3–10.

2. After the assault, Cotto put on a jacket, which covered his wounds. ECF No. 105-1 at 31:23–32:1.

3. At approximately 8:12 a.m. that morning, Cotto walked to the education department at USP Florence and was accompanied by members of Diaz's gang. *Id*. at 34:5–36:12.

4. While Cotto was in the education department, he remained surrounded by members of Diaz's gang and was too afraid to alert BOP staff to his wounds. *Id*. at 38:13–25.

5. While in the education department, Cotto showed his wounds to another member of Diaz's gang in the bathroom. An unidentified correctional officer walked by and looked into the bathroom window. Cotto did not speak to that officer or otherwise interact with that officer to know whether the officer noticed his wounds. *Id*. at 36:13–37:10; 39:20–40:18; 94:22–96:20.

6. Cotto stayed in the education department until 10:35 a.m. when he walked back to his housing unit. *Id*. at 40:19–43:7.

7. Upon his return to his cell, Cotto's cellmate told him Correctional Officer Gallegos was looking for Cotto and had searched their cell. Gallegos approached Cotto and took him to a private location and asked him to remove his shirt and then asked him about the blood on his pant leg. *Id*. at 43:10–44:19; ECF No. 92-2 ¶ 6.

8. When he first saw Cotto, Gallegos could not see any injuries because the layers of clothing Cotto was wearing covered the blood. ECF No. 92-2 ¶ 6.

9. This was the first time Cotto spoke to any BOP staff regarding the assault or his injuries. ECF No. 105-1 at 30:10–31:1; 32:18–33:1; 38:13–25.

10. Cotto did not ask Gallegos for medical care. *Id*. at 44:20–45:2; ECF No. 92-2 ¶ 6.

11. Gallegos immediately reported Cotto's injuries to the Lieutenant's office and within ten minutes of when Gallegos saw Cotto's injuries, Cotto was sent to the medical unit. ECF No. 92-2 ¶ 7; ECF No. 105-1 at 50:6–54:5.

12. Cotto was able to walk to the medical unit without assistance. ECF No. 92-2 ¶ 8; ECF No. 105-1 at 56:8–25.

13. Cotto was seen by a doctor and a nurse in the medical unit by 11:31 a.m. ECF No. 92-3 at 12.

14. Cotto was sent to a hospital via ambulance at 12:03 p.m. ECF No. 105-1 at 62:5–24.

15. Cotto was seen by a doctor at St. Thomas More Hospital Emergency Department by 12:37 p.m. ECF No. 92-3 at 18.

16. Later that afternoon, Cotto was transferred to Penrose Hospital. ECF No. 105-1 at 66:7–69:17; ECF No. 92-3 at 14–17.

17. On January 24, 2020, Cotto returned to USP Florence. He was seen by Nurse Garcia for a clinical encounter at Health Services. Cotto denied issues of concern at that time. His wounds were clean, dry, and intact. ECF No. 92-3 at 6–8.

18. On January 30, 2020, Nurse Garcia removed two sutures from Cotto's back. At that time, Nurse Garcia noted that the area was "clean dry and intact" with "no noted infection." ECF No. 92-3 at 5.

19. Cotto does not recall the steps Nurse Garcia took to remove the sutures. ECF No. 105-1 at 73:21–75:22.

20. Cotto felt a throbbing in the area where he had sutures before they were removed. ECF No. 105-1 at 75:21–22.

21. The throbbing did not change or get worse after the sutures were removed, but it eventually got better. *Id*. at 75:12–76:18.

22. Cotto's wounds had healed by March 23, 2020, at the latest. *Id*. at 82:10–14.

23. BOP staff are required to respond to emergencies, but "there are no mandatory rules, regulations, policy, or procedures as to what constitutes an emergency. Correctional staff exercise their judgment to differentiate between an institution emergency and an isolated incident." ECF No. 92-5 ¶ 8.

24. When an incident occurs at a correctional facility, correctional staff exercise their judgment and act accordingly. Staff must consider many variables including the location of the incident, the number of individuals involved, the presence of weapons, and injuries observed. The safety and security of the institution, its staff, and inmates, is of paramount importance. *Id*. ¶ 9.

25. USP Florence staff exercise discretion in deciding how to respond to institutional emergencies because "outside of adverse weather, hostage events, or civil disturbances, there are no mandatory rules, regulations, policy, or procedures dictating how staff must respond." *Id*. ¶ 10.

26. BOP policy "recognizes the careful balance between rendering care to inmates and the need for security. If an incident results in an inmate requiring medical care, the Program Statement on Patient Care provides that the program's objective is that 'Healthcare will be provided to inmate patients in accordance with proven standards of care without compromising public safety concerns inherent to the agency's overall mission.'" *Id*. ¶ 11 (quoting ECF No. 92-5 at 94).

## **ANALYSIS**

The defendant's complaint asserts two claims against the United States: (1) that the United States negligently responded to an assault he suffered on January 22, 2020 and (2) that a nurse employed by the United States negligently removed sutures causing an infection. ECF No.

7

87 at 3–13. Each claim arises under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680. *Id*.

Among other things, the United States argues that it is entitled to summary judgment on both claims because there is no evidence to support either of the claims. The United States also argues that the Court lacks subject-matter jurisdiction over the first claim because it has not waived sovereign immunity as to this claim. The latter argument relates to the Court's jurisdiction to hear the first claim, meriting priority consideration, and it proves dispositive.

**A.     Claim One**

The United States invokes the "discretionary-function" exception to the FTCA to assert sovereign immunity as to Claim One. ECF No. 92 at 13–16. The doctrine of sovereign immunity "rests on the principle that the United States cannot be lawfully sued without its consent in any case." *United States v. Lee*, 106 U.S. 196, 204 (1882). The FTCA "waives aspects of the government's sovereign immunity for certain classes of torts." *Knezovich v. United States*, 82 F.4th 931, 936 (10th Cir. 2023). "But rather than a blanket waiver, it excludes certain types of decisions, including decisions covered by the so-called discretionary function exception." *Id.* This exception excludes from the waiver any "claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The exception reflects "Congress' desire to prevent the judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Ball v. United States*, 967 F.3d 1072, 1076 (10th Cir. 2020) (quotation marks omitted).

8

A two-step test determines whether the discretionary-function exception applies. *Berkovitz v. United States*, 486 U.S. 531, 536–37 (1988). First, a district court examines "whether the action is a matter of choice for the acting employee." *Id*. at 536. If so, a court then considers "whether that judgment is of the kind that the discretionary function exception was designed to shield," that is, a decision "based on considerations of public policy." *Id*. at 537. Generally, "[w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *United States v. Gaubert*, 499 U.S. 315, 324 (1991). "The focus of the inquiry" of the second step, then, "is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Id*. at 325. So "[r]ather than asking whether policy analysis is the actual reason for the decision in question, [a court] ask[s] categorically (rather than case specifically) whether the kind of conduct at issue can be based on policy concerns." *Ball*, 967 F.3d at 1077 (quotation marks omitted). Therefore, "it is unnecessary for government employees to make an actual conscious decision regarding policy factors" for the exception to apply because "[t]he failure to consider some or all critical aspects of a discretionary judgment does not make that judgment less discretionary and does not make the judgment subject to liability." *Kiehn v. United States*, 984 F.2d 1100, 1105 (10th Cir. 1993) (quotation marks omitted). In short, if there is a statute, regulation, or policy that "specifically prescribes a course of action for an employee to follow," the decision is not discretionary. *Gaubert*, 499 U.S. at 322. But if the decision is a matter of judgment or choice, it is discretionary. *Id*. The party asserting jurisdiction "bears the burden of

9

proving that sovereign immunity has been waived." *Sydnes v. United States*, 523 F.3d 1179, 1183 (10th Cir. 2008) (quotation marks omitted).

The plaintiff cannot carry that burden here. The exigency of the response to the plaintiff's situation was a judgment call. According to the Declaration of Ryan Lewis, a Lieutenant at USP Florence, "[w]hile it is required that [BOP] staff respond to emergencies, there are no mandatory rules, regulations, policy, or procedures as to what constitutes an emergency." ECF No. 92-5 ¶¶ 1, 8. Instead, "[c]orrectional staff exercise their judgment to differentiate between an institution emergency and an isolated incident." *Id.* ¶ 8. When an incident occurs in a facility, "correctional staff exercise their judgment" and "must consider numerous variables to include the location of the incident, the number of individuals involved, the presence of weapons, and injuries observed." *Id.* ¶ 9. Ultimately, "[s]afety and security of the institution, its staff and inmates, is of paramount importance." *Id.*

The method of response was also a judgment call; the same declaration states that "[w]hile it is required that staff respond to institutional emergencies, outside of adverse weather, hostage events, or civil disturbances, there are no mandatory rules, regulations, policy, or procedures dictating how staff must respond. This allows staff the discretion to decide the best available course of action." *Id.* ¶ 10. This is logical given that "[p]olicy recognizes the careful balance between rendering care to inmates and the need for security." *Id.* ¶ 11. As such, the first step of the discretionary-function exception is satisfied.

The plaintiff resists this conclusion, pointing to admonitions that "where acts and decisions . . . were mandated by regulatory directive," they fall outside the discretionary-function exception. *Kiehn v. United States*, 984 F.2d 1100, 1107 (10th Cir. 1993); *see* ECF No. 105 at 7. But he identifies no actual mandatory directive. He points, for instance, to BOP Program

10

Statement 6031.05, but that Statement counsels its reader to balance "proven standards of care" against "compromising public safety concerns inherent to the agency's overall mission," requiring judgment in striking the appropriate balance. ECF No. 92-5 at 94. He also avers that BOP Program Statement 5500.14 requires "reasonable measures to protect inmates from known risks," ECF No. 105 at 6–7, but neither points the Court to the statement therein so requiring nor explains how the determination of what constitutes "reasonable measures" is not a matter of discretion. Establishing jurisdiction is his burden, *Sydnes*, 523 F.3d at 1183, and these cursory invocations of these Program Statements do not carry the burden. *Cf. Garcia v. U.S. Air Force*, 533 F.3d 1170, 1178 (10th Cir. 2008) (rejecting the plaintiffs' reading of a policy as mandatory when the language of the written policy did not mandate compliance with any specific procedure). As such, the Lewis Declaration establishes that the actions taken by its employees after discovering the plaintiff's wounds were "a matter of choice for the acting employee." *Berkovitz*, 486 U.S. at 536.

   The analysis therefore progresses to consider "whether that judgment is of the kind that the discretionary function exception was designed to shield," that is, a decision "based on considerations of public policy." *Id*. at 537. Program Statement 6031.05 makes clear that determining how to best provide healthcare to inmates must be balanced with "public safety concerns." ECF No. 92-5 at 94. Given such balancing responsibilities, the employees' decisions here about how to respond to the plaintiff's medical needs were "grounded in public policy and the discretionary function applies." *Sledge v. United States*, 723 F. Supp. 2d 87, 96 (D.D.C. 2010); *see, e.g., Ashford v. United States*, 463 F. App'x 387, 395 (5th Cir. 2012) ("Maintaining order and security in prison is the type of policy-based decision that the discretionary function exception shields."); *Montez v. United States*, 359 F.3d 392, 399 (6th Cir. 2004) ("[T]he relevant

11

statute and regulations do not prescribe a mandatory course of conduct for prison officials to follow when making decisions regarding inmates' safety."); *Santana-Rosa v. United States*, 335 F.3d 39, 44 (1st Cir. 2003) ("The management of large numbers of potentially dangerous individuals within a penal facility inevitably requires not only the exercise of discretion but decision-making within the context of various difficult policy choices."); *Dykstra v. United States Bureau of Prisons*, 140 F.3d 791, 796 (8th Cir. 1998) ("Prison officials supervise inmates based upon security levels, available resources, classification of inmates, and other factors. These factors upon which prison officials base such decisions are inherently grounded in social, political, and economic policy."). After all, "[w]hen established governmental policy, as expressed or implied by statute, regulation or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324. This is because "[t]he focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Id*. at 325. And the plaintiff has offered nothing to "rebut[ ] the presumption that under circumstances such as this, the government's actions and decisions were grounded in policy." *Kiehn*, 984 F.2d at 1108 n.12 (citing *Gaubert*, 499 U.S. at 324–25); *see also Luttrell v. U.S. Gov't*, 237 F. Supp. 2d 1292, 1297 (W.D. Okla. 2002) ("Plaintiff, who has the burden of rebutting the presumption, has failed to present any evidence showing that the decisions and actions challenged were not based on policy considerations such as [inmate's] security classification, medical condition and needs, the proximity of Park View Hospital and on Park View Hospital's medical decisions."). Accordingly, the Court lacks subject-matter jurisdiction over the plaintiff's first claim against the United States. *Warren*, 244 F. Supp. 3d at 1233. As a

result, the Court grants the United States' motion as to Claim One, which alleges that the United States' employees negligently responded to the assault on him and his injuries and dismisses that claim without prejudice for lack of subject-matter jurisdiction.

**B.      Claim Two**

Claim Two alleges that after the plaintiff was returned to USP Florence, Ms. Garcia, a nurse employed by the United States, negligently removed sutures causing an infection. ECF No. 87 at 5–6, 10–13. The Court previously advised the parties that it construed this as a negligence claim, not a medical malpractice claim. *Cotto v. United States*, No. 22-cv-01102-MEH, 2023 WL 11862290, at *5–6 (D. Colo. Nov. 29, 2023). As a result, "'the plaintiff must show a legal duty of care on the defendant's part, breach of that duty, injury to the plaintiff, and that the defendant's breach caused the plaintiff's injury.'" *Id*. at 5 (quoting *Day v. Johnson*, 255 P.3d 1064, 1068 (Colo. 2011)); *see also Mathison v. United States*, 619 F. App'x 691, 693 (10th Cir. 2015) (state substantive law applies to suits against the United States under the FTCA). As a result, this claim exists only "insofar as it alleges a simple negligence claim based on improper wound care." *Id*. at *6.

On that claim, there is no record evidence that Nurse Garcia caused any injury to the plaintiff. To begin, the plaintiff's own deposition testimony concedes that he experienced throbbing in the wound before Nurse Garcia removed the sutures and that throbbing did not change as a result of the removal of the sutures. ECF No. 105-1 at 75:21-76:18. In addition, the United States offered the Declaration of Dr. Kenneth Scissors, M.D., as well as his expert reports to indicate that "nothing in the medical records [he reviewed] indicates that Plaintiff experienced an infection after the suture removal." ECF No. 92-4 ¶ 8. Indeed, medical records post-dating the suture removal indicate that the area was "clean dry and intact." ECF No. 92-3 at 5. And, to the

extent any infection did exist, Dr. Scissors opined that "it is more likely that the infection was already present beneath the skin surface and emerged later, unrelated to the suture removal procedure." *Id*. ¶ 8. His expert report explains that "[i]t is extremely unlikely that an infection would be caused by suture removal, so if there was an infection it is far more likely to be due to something other than the suture removal procedure. Most commonly, if an infection appears after the sutures are removed it indicates that the infection was already brewing beneath the skin surface and emerged later, unrelated to the suture removal procedure." *Id*. at 11. Put simply, no record evidence showed a post-suture removal infection, let alone one caused by Nurse Garcia.

In response, the plaintiff cites an online medical textbook to adduce an appropriate standard of care for suture removal. ECF No. 105 at 10. But this misses the point. Because the element of causation is dispositive, there is no need to determine the appropriate standard of care. The plaintiff also notes that expert testimony cannot resolve issues of credibility. ECF No. 109-1 at 9. That may be, but there is no credibility contest here; instead, there is simply expert causation testimony on one side and an absence of causation evidence on the other. Finally, the plaintiff offers a citation to his deposition testimony generally and at 54:7–55:10, as well as a general citation to the medical records and his deposition testimony to try to create a disputed issue of material fact. ECF No. 105 at 10; ECF No. 109-1 at 9. First, the portion of his deposition he cites specifically does not relate to the suture removal. Further, the Court need not "comb the record" in the broader citations "in order to make [a party's] arguments for him." *Mitchell v. City of Moore*, 218 F.3d 1190, 1199 (10th Cir. 2000). Moreover, for aught that appears, that evidence is consistent with Dr. Scissors' declaration and expert opinion. The plaintiff offers no other evidence to support his contention that Nurse Garcia's removal of the sutures caused an injury. As a result, he fails to demonstrate a genuine dispute of material fact with regard to causation, an

essential element of his negligence claim brought under the FTCA, and the United States is entitled to summary judgment on his claim that its employee, Nurse Garcia, negligently removed two of his sutures causing infection. *See Patel v. United States*, No. CIV-08-1168-D, 2009 WL 1377530, at *12 (W.D. Okla. May 14, 2009) (reviewing records, finding that there is no evidence that BOP's medical treatment "resulted in any substantial injury to Plaintiff," and granting motion for summary judgment).

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the Plaintiff's Motion for Leave to File Sur-Reply in Opposition to Defendant's Motion for Summary Judgment, ECF No. 109, is **GRANTED**.

It is further ORDERED that the United States' Motion for Summary Judgment, ECF No. 92, is **GRANTED**. The plaintiff's first claim, which alleges that the United States' employees negligently responded to the assault on the plaintiff and his injuries, is **DISMISSED without prejudice** for lack of subject-matter jurisdiction.

The plaintiff's claim against defendant Alfredo Diaz remains. ECF No. 87 at 14–15. At this time, the Court will not instruct the Clerk of the Court to enter judgment in favor of defendant United States of America as to the remaining portion of the plaintiff's second claim pursuant to Fed. R. Civ. P. 54(b) as no showing has been made for that relief.

It is further ORDERED that a **Telephonic Status Conference** is set on **August 19, 2025 at 11:30 a.m.** The plaintiff may participate in the Telephonic Status Conference by dialing 571-353-2301 and then entering 198033559#. The plaintiff shall mute his telephone until the conference begins and at any time he is not speaking. The purpose of the Telephonic Status Conference is to discuss the plaintiff's claim against defendant Alfredo Diaz. The plaintiff was

granted leave to serve this defendant by publication, ECF Nos. 86 and 93, but has taken no further steps to prosecute this claim. To the extent the plaintiff no longer wishes to proceed with his claim against Mr. Diaz, he may file a notice of voluntary dismissal of that claim pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i) prior to the Telephonic Status Conference. Counsel for the United States may, but need not, participate in the Telephonic Status Conference.

DATED this 29th day of July, 2025, at Denver, Colorado.

BY THE COURT:

_____
Cyrus Y. Chung
United States Magistrate Judge